EDWARD MACMILLAN, Plaintiff, v. EDWARD T. MCCAFFREY, as Commissioner of Licenses of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, November 30, 1950.

*Oliver T. Cowan* and *Richard M. Goldwater* for plaintiff.

*John P. McGrath, Corporation Counsel (Saul Moskoff* and *James J. Hurley* of counsel), for defendants.

EDER, J. This is an action for a declaratory judgment and plaintiff, in connection therewith, moves for an injunction *pendente lite,* enjoining and restraining the defendants from suspending or revoking plaintiff's license for the operation of a launderette store because of installation of an extractor and a dryer, and from interfering with plaintiff's operation and conduct of said launderette store. The cause was submitted upon an agreed statement of facts and the case is now ready for final determination of the sole issue of law involved, viz., the application of clause (51) of paragraph (a) of section 4 of article II of the New York City Zoning Resolution to plaintiff's launderette operation.

Plaintiff owns and operates a launderette store pursuant to a license duly issued to him by the commissioner of licenses of the city of New York, on July 10, 1950, bearing No. 412550. Such an establishment, it has been held, does not come within the purview of clause (51) of paragraph (a) of section 4 of article II of the New York City Zoning Resolution, as amended to January 23, 1950, which prohibits the conduct and operation in a business district of a steam or wet wash laundry; that such an enterprise is a retail self-service laundry, which may be availed of by the general public for use by depositing a coin — the charge for the service — in coin-operated automatic washing machines. This status of such launderette business was determined in *Matter of Packer* v. *Board of Standards & Appeals* (62 N. Y. S. 2d 54 [SHIENTAG, J.], affd. 271 App. Div. 874, motion for leave to appeal denied, 296 N. Y. 1060).

Plaintiff, on or about April 3, 1950, duly filed an application with the department of housing and buildings for permission to alter the store premises in question, proposing to install, among other equipment, twenty washing machines, one extractor and one dryer in connection with the establishment and operation of a launderette at said premises. The application was approved; such approval provided for installation of twenty Bendix automatic washing machines but did not include the extractor and dryer. This approval was transmitted to the department of licenses and the commissioner of licenses on or about July 10, 1950. The commissioner of licenses, after investigation by him, determined that the provisions of the several applicable laws and requirements were fully satisfied and

approved plaintiff's application for a laundry license, as mentioned.

Shortly thereafter, on or about July 17, 1950, plaintiff caused to be installed in his said launderette store one Telecoin-Back extractor (also known as a spinner) and one Telecoin-Ace dryer for use with the said twenty Bendix automatic washing machines. This subsequent installation of said extractor and dryer in the operation of the laundry business by plaintiff was reported by an inspector of the department of licenses and thereafter plaintiff was cited to appear at a hearing on August 8, 1950, before the department of licenses and the license commissioner regarding the operation of the extractor and dryer in plaintiff's said launderette.

As a result of the hearing plaintiff was informed by said department and commissioner that the installation of said extractor and dryer was contrary to the architect's plans which had previously been approved by the department of housing and buildings and the borough superintendent of Queens in connection with plaintiff's application for a license to operate a laundry and that it was necessary for plaintiff to secure the approval of the department of housing and buildings for the installation of said extractor and dryer, and plaintiff was informed that if he did not secure such approval his license would be revoked or suspended.

On August 29, 1950, the department of licenses and the license commissioner then wrote to the department of housing and buildings, Borough of Queens, directing attention to the installation of the extractor and dryer and requesting information as to whether it met with said department's approval. On September 5, 1950, response was made to this letter that the installation of the said extractor and dryer had not been and would not be approved by said housing and buildings department.

Thereafter and on or about September 15, 1950, an amended application was filed by plaintiff showing the existence of this additional machinery, viz., one extractor and one dryer, and the approval of the department of housing and buildings was asked. This was refused in a decision rendered on September 29, 1950, upon the ground that the installation of the extractor and dryer in the existing launderette store created a steam laundry in a business use district contrary to clause (51) of paragraph (a) of section 4 of article II of said zoning resolution.

Paragraph (a) of section 4 of article II provides: " In a business district no building or premises shall be used, and no building shall be erected which is arranged, intended or designed

to be used for any of the following specified trades, industries or uses: * * * (51) Steam or wet wash laundry other than in a hotel or hospital.''

The borough superintendent predicated his refusal to approve the installation of the extractor and dryer upon a departmental opinion or memorandum of the commissioner of housing and buildings to the effect that he was in accord with an opinion of the board of standards and appeals that the use of additional machinery, such as extractors (spinner) and dryers in the operation of a launderette was not covered or contemplated in the decision in the *Packer* case (*supra*).

It appears that prior to this refusal the board of standards and appeals, under calendar No. 606-49-A, passed upon an appeal from the refusal of the borough superintendent of Queens to rescind his approval of the installation of ten Norge washing machines, a Huebsch dryer and spinner (extractor), which it appears was predicated or at least influenced by a report made by a committee of the board of standards and appeals, dated February 24, 1950, and which also guided and influenced the adoption of the departmental ruling issued by the commissioner of housing and buildings. So far as here pertinent this report reads: '' It appears that supplementary machines, such as dryers and spinners, have customarily been permitted by the Department of Housing and Buildings subsequent to the Packer decision. In the opinion of the Board, however, there is no warrant for permitting such supplementary equipment under the Packer decision and this report does not contemplate permission to have them in addition to the self-service washing machines.''

On October 3, 1950, the department of licenses informed plaintiff that a hearing would be held on October 10, 1950, by it in connection with the installation of said extractor and dryer. A hearing was held and the evidence disclosed that the extractor used in the operation of plaintiff's laundry for a nine-pound package of wash consumed, in time, five minutes, and that the dryer used consumes in its operating time about fifteen minutes; that in the operation of these units they make no vibration and emit no noise, dirt or spray.

The evidence also established that the function of the extractor is to remove as much loose water from the wash as possible; that the function of the dryer is to actually dry the wash; all moisture and dampness are removed. The evidence also established that no steam, wet or live, is employed in any of the operations carried on in the premises and that the business is

operated as a self-service automatic laundry whereby the general public has access to the machines and operates them by depositing a coin therein; that it is essentially retail in nature; that no laundry is picked up outside the premises and brought there by the operator or anyone connected with its operation.

Testimony was also adduced by the plaintiff that he cannot successfully operate his launderette store without the additional equipment of the extractor and dryer for the reason that the public demands these services in a launderette store.

It appears at said hearing the license department and the license commissioner stated that the sole reason they had for revoking or suspending plaintiff's license to operate said launderette store was because plaintiff failed to secure the approval of the department of housing and buildings of his application and architect's plans as amended, which were filed with the department of housing and buildings. It also appears that at the conclusion of the hearing the commissioner of licenses announced that in view of the adverse report received from the department of housing and buildings, dated September 5, 1950, the department of licenses would require plaintiff to remove the extractor and dryer by November 1, 1950, and that if this was not done the laundry license would be revoked or suspended.

The parties have stipulated the above facts and by reason of the dispute with respect to the right of plaintiff to operate and conduct his launderette store, a judicial determination is sought concerning said restrictive provision of said zoning resolution and the nature and effect thereof on the licensing authority of the commissioner of licenses and the rules and regulations with reference to licensing laundries, promulgated thereunder.

In the light of the ruling in the *Packer* case (*supra*), the issue narrows itself down to whether the defendants were justified in acting as they did by virtue of the views expressed in the report of the committee of the board of standards and appeals, above alluded to, that in their opinion the decision in the *Packer* case (*supra*) did not include or contemplate the installation of an extractor or dryer in the operation of a launderette store and was not to be regarded as a decisive ruling in that regard and hence warranted holding that until the approval of the department of housing and buildings was obtained the use of an extractor and dryer was improper and must be removed under penalty of suspension or loss of the license to operate a laundry.

It is quite apparent to this court that the use of an extractor and dryer is, in reality, incidental, but yet needful to the proper and successful operation of a launderette, and, therefore, implicit in the ruling in the *Packer* case permitting a launderette store to be operated is the right to use in connection therewith an extractor and dryer requisite to the successful operation of such a business and establishment. To hold that a launderette store may be operated but not with essential additional and incidental equipment is to create not only chaos but absurdity. The canon of sensible construction should be and is invoked by the courts to prevent an absurd result. Of what value is a license to operate if the licensee is to be denied or may be refused the right to use essential equipment or needful additions?

I am of opinion that in the light of the situation disclosed that the plaintiff, having been granted a license, it carried with it, the absolute right to install the additional and essential equipment like an extractor and dryer and did not require any additional license therefor.

I am also of opinion that the view taken by the defendants that the installation of the extractor and dryer converted or transformed the launderette store into a steam or wet wash laundry was an erroneous determination and without support in logic and law. The fact is, as one of reality, that the use of these units did not in the slightest degree, change its basic character as a self-service retail laundry operation.

The objectionable features which characterize a steam or wet wash laundry, and alluded to in the *Packer* case, are not present in the operation of a launderette store and service as conducted by plaintiff. Indeed, this is substantially admitted in the said committee report of the board of standards and appeals wherein it is stated that "supplementary machines, such as dryers and spinners (extractors) have customarily been permitted by the Department of Housing and Buildings subsequent to the Packer decision."

The legality of this permitted use of an extractor and dryer was never thought to be questioned by the defendants until the said committee of the board of standards and appeals expressed an opinion that the *Packer* decision did not contemplate in its effect that an extractor and dryer constituted and were included as additional and essential units in the operation of a launderette establishment, viz., their use in addition to the self-service washing machines. It was not any conclusion of illegality that persuaded the defendants to take their stand as they have done, but, rather, to accomplish an agreement of views and department

harmony that the commissioners and departments have acquiesced in the same opinion as expressed in said committee's report.

The court regards the action and threatened action of the defendants as erroneous and illegal, even though their stand is taken in good faith; it cannot serve to deprive the plaintiff of the right to operate his launderette store withour fear and free from the threat of suspension or revocation of his license to operate his launderette store, and such threatened suspension or revocation of his laundry license is without legal right.

In the opinion of the court only sheer disregard of reality can induce a conclusion that the installation and use of the extractor and dryer has transformed the launderette into a steam or wet wash laundry and hence it has come within the restrictive provision of the zoning resolution.

The court accordingly declares that the board of standards and appeals erred in its announcement and ruling under Calendar No. 606-49-A, and incorrectly construed the meaning of clause (51) of paragraph (a) of section 4 of article II of the zoning resolution afore-mentioned, and that defendants' action based thereon threatening to suspend or revoke plaintiff's laundry license was and is illegal, and further declaration is made that it is lawful for plaintiff to install an extractor and dryer in his retail self-service launderette and that he is entitled to injunctive relief as is necessary to effectuate this result.

The motion is granted and judgment rendered for plaintiff as herein indicated. Settle order and judgment.